IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIRECTV, INC., a California
corporation,

       Plaintiff,                      Case No. 04-6310-HO

       v.                              ORDER

TRAVIS BEAN,

       Defendant.

Plaintiff moves for default judgment against defendant Travis Bean, pursuant to Fed.R.Civ.P. 55(b). Plaintiff also moves for entry of a permanent injunction, and for damages and attorney fees and costs. The court previously granted plaintiff's motion for entry of default against Bean. See Order dated April 14, 2005.

## Discussion

Upon default, the factual allegations of the complaint are

generally taken as true, except the allegations relating to damages. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). The court is not required to make detailed findings regarding liability. Fair Housing of Marin v. Combs, 285 F.3d 889, 906 (9th Cir. 2002). The complaint alleges Bean (1) received and/or assisted others in receiving plaintiff's satellite transmissions of television programming without authorization in violation of 47 U.S.C. § 605(a), (2) engaged in the manufacture, assembly, modification, distribution and/or sale of devices knowing or having reason to know that those devices are primarily of assistance in the unauthorized decryption of DIRECTV's satellite transmissions of television programming in violation of 47 U.S.C. § 605(e)(4), and (3) intentionally intercepted, endeavored to intercept or procured others to intercept or endeavor to intercept plaintiff's satellite transmissions of television programming in violation of 18 U.S.C. § 2511(1)(a). The complaint also contains more specific allegations as to how Bean came into possession of devices and equipment primarily of assistance in the unauthorized decryption or surreptitious interception of satellite transmissions ("pirate access devices"). Complaint, ¶¶ 11-15. Based on these allegations, the court finds Bean liable on plaintiff's claims.

Where default judgment is possible based on sufficient allegations, the court retains discretion to grant or withhold

2 - ORDER

judgment. <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In this case, resolution on the merits is not possible, because Bean has not appeared; the complaint's allegations state claims upon which relief may be granted; there are no disputed issues of fact as a result of Bean's non-appearance; and nothing suggests that Bean's default is the result of excusable neglect. Default judgment is therefore appropriate. <u>Id</u>.

Upon finding a violation of Section 605(a), the court may grant an injunction on such terms it deems just to restrain future violations. 47 U.S.C. § 605(e)(3)(B)(i). A person whose communication is intercepted in violation of 18 U.S.C. § 2511(1)(a) may obtain an injunction. 18 U.S.C. § 2520(b)(1). Following these standards, Bean is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2) intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

Plaintiff seeks an award of damages in the amount of $280,400 for Bean's violations of 47 U.S.C. § 605(a) & (e)(4), and 18 U.S.C. § 2511(1)(a). A party aggrieved by violation of Section 605(a) may recover statutory damages of not less than $1,000 or more than $10,000 for each violation as the court

considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). For each violation of Section 605(e)(4), an aggrieved may recover not less than $10,000 and not more than $100,000, as the court considers just. A party whose communication is intercepted may recover damages in a civil action. 18 U.S.C. § 2520(a). A court has discretion to award statutory damages for violation of 18 U.S.C. § 2511(1)(a), but if it chooses to do so it must award the greater of $100 a day for each day of violation or $10,000. 18 U.S.C. § 2520(c)(2).

Plaintiff submitted evidence of the following in support of its claim that Bean intercepted its signal in violation of 18 U.S.C. § 2511(a)(1) and 47 U.S.C. § 605(a), everyday from September 13, 1999 through November 29, 2004, a period of 1,904 days.[1] Bean received all the equipment necessary to receive plaintiff's encrypted programming when he purchased and activated a subscription to DIRECTV in May 1998. Mader Decl., ¶ 31. Bean maintained the subscription intermittently and it was cancelled on October 23, 2000. Id. Bean purchased "unloopers" on January 25 and 28, 2002. Id., ¶¶ 32-34. Unloopers are designed to restore functionality to illegally modified DIRECTV access cards disabled by misuse or DIRECTV's electronic anti-piracy measures. Id., ¶ 35. Bean made additional purchases from companies known

---

[1] Plaintiff seems to contend that Bean intercepted its signal without authorization beginning on the date of his last payment, rather than on the date his subscription was terminated.

4 - ORDER

to sell pirate access devices in February and July 2000, March 2002, November 2004 and December 2005.[2] Id., ¶¶ 41-42.

Bean joined several internet forums or web sites devoted to the exchange of information relating to the theft of DIRECTV programming. Bean submitted posts to the Pirate Den web site indicating that he intentionally used pirate access devices to intercept DIRECTV's transmissions.

On November 28, 2000, Bean wrote,

> My Interesting Devices emu works fine while running sle44e_p.exe in a Dos box in Windows 98, just as long as the Dos box is the active window. As soon as the Dos box is minimized the emulation stops. All I do is run the autoexec.bat (sle44e_p.exe/a) on my boot disk from Explorer and then I do a soft reboot of my IRD and I'm watching TV.

Mader Decl., Ex. 7 at 21-22. According to plaintiff's witness, "emu" refers to an emulator, a devise used to gain unauthorized access to DIRECTV programming by emulating, in conjunction with a computer, certain functions of a DIRECTV access card. Mader Decl., ¶ 67.

On February 12, 2002, Bean wrote,

> this hobby has been overrun by freeloaders and dummies who expect someone else to provide them with their easy 'fix' every time Dave decides to get mean and nasty. . . It is very unwise to become reliant on someone else to provide your free TV viewing pleasure.

---

[2] Plaintiff further contends that Bean purchased an additional unlooper on February 25, 2002. The cited bank record may evince a refund from a January 28, 2002 purchase. Compare Def's Ex. 2 at 3, with Def's Ex. 6 at 6.

5 - ORDER

Mader Decl., Ex. 7 at 11. According to plaintiff's witness, "Dave" refers to plaintiff DIRECTV. Mader Decl., ¶ 61. On May 11, 2002, Bean wrote,

> I have watched TV for hours on end without one single glitch or freeze. * * * I have a K6-2 500 MHz processor with 512 MB of RAM running on the Windows 2000 platform. I am using a NextGen 3.57 ISO programmer from Vector Technologies to communicate with my HU card. My programmer is connected to COM1 and my internal Max233 emulator is connected to COM2. * * * I have found that a standard 3.57 mhz ISO programmer works best at this time. Maybe there are issues with certain unloopers and loaders? * * * I believe that this software is ready for prime time due to the fact I am watching TV without experiencing any freezes or hashed channels.

Mader Decl., Ex. 7 at 19-20.

The Interesting Devices emulator and Vector Technologies programmer are not mentioned in the complaint. Notwithstanding, the court finds from the preponderance of plaintiff's evidence that Bean successfully intercepted plaintiff's signal after plaintiff disconnected his subscription on October 23, 2000.

Court's employ a variety of approaches in fixing the amount of damages for violation of 47 U.S.C. § 605(a). See DirectV v. Haskell, 344 F. Supp. 2d 761, 763 (D. Me. 2004) (surveying approaches). In this case, there is no evidence of the number or frequency of interceptions by Bean, what programming Bean intercepted, or, by extension, the value of intercepted programming. In another case of default, this court calculated the cost of a lost subscription and awarded $1,000 in statutory

6 - ORDER

damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). <u>DIRECTV v. Anderson</u>, Civ. No. 03-688-HO, Order dated August 20, 2005 at 6. In contrast to the <u>Anderson</u> case, plaintiff's evidence demonstrates that Bean is an accomplished "hobbyist" who more probably than not used pirate access devices to watch plaintiff's transmissions without authorization for "hours on end" and advised others regarding how to intercept plaintiff's transmission. As his posts reveal, Bean intercepted plaintiff's transmissions on multiple occasions. An award based on the lost subscription amount alone would be insufficient in this case. This is an appropriate case for an award with deterrent effect. See <u>Haskell</u>, 344 F. Supp. 2d at 764.

Because it cannot determine the value of programming intercepted or the number of times Bean intercepted plaintiff's programming, the court will award $10,000 (the maximum permitted by 47 U.S.C. § 605(e)(3)(C)(i)(II)) for each of two violations of Section 605(a) established by Bean's May 11 and November 28, 2002 posts to the Pirate Den forum, for a total statutory damage award of $20,000.

Plaintiff seeks $90,000 for at least nine violations of 47 U.S.C. § 605(e)(4), which prohibits, <u>inter alia</u>, the modification, assembly and distribution of pirate access devices. Plaintiff asserts that Bean assembled or modified a number of pirate access devices for himself, assembled a "pirate system"

7 - ORDER

for a friend, sold four pirate access devices consisting of two access cards and two first generation RCA receivers, and imported at least three pirate access devices from Great Britain.

While plaintiff presented evidence that Bean purchased an emulator from the British company Interesting Devices and made two additional purchases from British companies, the complaint does not allege a violation of Section 605(e)(4) based on importation of pirate access devices and does not allege facts which, if true, would establish that Bean imported pirate access devices. Plaintiff cannot premise his Section 605(e)(4) claim on the modification of disabled or non-disabled DIRECTV access cards or the sale of first generation receivers or satellite dishes. Plaintiff does not demonstrate that such cards or devices are primarily of assistance in the unauthorized decryption of satellite transmissions. 47 U.S.C. § 605(e)(4). One would expect that such devices are primarily of assistance in the authorized interception of plaintiff's transmissions. Further, in the absence of authority, this court is not prepared to hold that the programming of DIRECTV access cards constitutes assembly of devices or equipment within the meaning of Section 605(e)(4). It is not clear that Congress intended the prohibition on modification of devices or equipment to include the programming of programmable "smartcards" such as DIRECTV's access cards.

The final question with respect to plaintiff's Section

8 - ORDER

605(e)(4) claim is whether Bean's alleged assembly of pirate systems constitutes the assembly or modification of a prohibited device or equipment. Plaintiff provides no authority holding that such activity violates Section 605(e)(4) and the court finds none. The Fifth Circuit expressly declined to decide whether the use of an unlooper or insertion of a chip into an emulator qualify as modifications within the meaning of Section 605(e)(4). DIRECTV, INC., v. Robson, 420 F.3d 532, 545 (5th Cir. 2005). The alleged pirate systems apparently consist of the following connected components: unlooper or programmer, emulator, personal computer, DIRECTV access card and receiver. See Mader Decl., ¶¶ 63-66. If connecting these components violates Section 605(e)(4), then the statute is violated any time a pirate access device is connected to legitimate hardware. In the absence of contrary authority, the court rejects this broad interpretation of a criminal statute. The court finds on this record that Bean did not violate Section 605(e)(4) merely by connecting the components of what plaintiff refers to as pirate systems.

Plaintiff is entitled to an award of reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii) (award mandatory); 18 U.S.C. § 2520(b)(3) (award discretionary). Plaintiff seeks attorneys' fees in the amount of $7,768, and costs in the amount of $966.25. The requested attorneys' fees are reasonable, and are allowed. The time expended is not typical for a default

9 - ORDER

judgment. Plaintiff submitted detailed documentation of attorney time expended and counsel's declaration explaining that time expended was necessitated by Bean's initial dodging of service, Bean's failure to authorize his attorney to accept service, settlement negotiations and preparation of settlement documents (which Bean ultimately refused to execute after terminating his attorney), and the large volume of documentary evidence. Smith Decl. ¶¶ 10-14.

The award is based on hourly rates of $250 attorney Smith, admitted to practice in 1991, $60 for paralegal McCarthy and $55 for paralegal Zochert. The attorney rate is somewhat higher than the average rate for Portland attorneys with similar experience reported in the 2002 Oregon State Bar Economic Survey (13-15 years = $189. The higher rate is justified to compensate for inflation, and because plaintiff's attorney has significant experience litigating the claims at issue. According to plaintiff, its attorneys have filed 52 lawsuits against 190 defendants on it's behalf. The court is handling several of these cases, and has observed that the claims are similar in many, if not all of the cases with which the court is familiar.

The cost bill reflects costs expended for the filing fee, fees of the process server, photocopying, long distance telephone charges, subpoena fees and public records research. Plaintiff provided documentation that it billed these amounts to the

10 - ORDER

client.  Smith Decl., Ex. 2 at 1-2.  These costs are allowed.

## Conclusion

For the foregoing reasons, plaintiff's motion for default judgment and permanent injunction [#15], and motion for attorney fees and costs [#18] are granted to the extent provided herein.

Travis Bean is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2) intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

The clerk is directed to enter final default judgment against Travis Bean.  The judgment shall provide that plaintiff shall recover of Travis Bean $20,000 in statutory damages, $7,768 in attorneys' fees, and $966.25 in costs.

IT IS SO ORDERED.

DATED this 25th day if April, 2006.

Michael R. Hogan
United States District Judge

11 - ORDER